# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3093 | **DATE** | 10/27/2000 |
| **CASE TITLE** | LIU vs. PRICE WATERHOUSE et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 31 OCT 00 at 10:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order on plaintiff's proposed jury instructions 18A,, 27, and defendants' proposed instruction 60.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | OCT 30 2000 |
| | Notified counsel by telephone. | date docketed |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | 10/27/2000 date mailed notice |
| JS | courtroom deputy's initials | JS mailing deputy initials |
| | Date/time received in central Clerk's Office | |

Document Number 212

ED-7 FILED FOR DOCKETING
00 OCT 30 AM 9: 03

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| XU LIU, | ) | |
| Plaintiff-Counterdefendant, | ) ) ) | |
| v. | ) ) | No. 97 CV 3093 |
| PRICE WATERHOUSE LLP and COMPUTER LANGUAGE RESEARCH, INC., | ) ) ) | |
| Defendant-Counterdefendants. | ) ) | |
| PRICE WATERHOUSE LLP and COMPUTER LANGUAGE RESEARCH, INC., | ) ) ) ) | **DOCKETED** OCT 3 0 2000 |
| Counterclaimants | ) ) | |
| v. | ) ) | |
| XU LIU | ) ) ) | |
| Counterdefendant. | ) | |

MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S PROPOSED JURY
INSTRUCTIONS 18A, 27, AND DEFENDANTS' PROPOSED INSTRUCTION 60

JAMES F. HOLDERMAN, District Judge:

The parties dispute how the jury should be instructed regarding the computation of profits claimed to have resulted from defendants Price Waterhouse and Computer Language Research's alleged infringements of plaintiff Xu Liu's copyright in the Sky RevUp Program ("the Sky Program") by defendants' loading of the Sky Program on to a computer and later selling a 1996 version of the program ("the Post-Sky Program"). Defendants argue that the jury should be instructed that "plaintiff

1

may not recover profits arising from the sale of McNerthney's 1996 version of RevUp 32 ['the Post-Sky Program'] without also proving that his version was <u>substantially similar</u> to the derivative New RevUp 32 ['the Sky Program'] in which LIU claims a copyright." (Defendants' Proposed Instruction 60) (emphasis added). Plaintiff argues that this instruction should be changed to state that plaintiff may not recover profits arising from the sale the Post-Sky Program "without proving that the profits from [the Post-Sky Program] are <u>attributable to</u> McNerthney's intermediate copying [the Sky Program] in which LIU claims a copyright." Defendants also object to Plaintiff's Proposed Instructions 18A and 27 (Revised). Plaintiff's Proposed Instruction 18A (Revised) explains how intermediate copying may infringe a copyright. Plaintiff's Proposed Instruction 27 (Revised) states that a copyright owner "is entitled to an infringer's direct and indirect profits which are attributable to that infringement," and then identifies the downloading of the Sky Program on to defendants' computer as one alleged infringement. Defendants argue that Plaintiff's Proposed Instructions 18A and 27 (Revised), and plaintiff's proposed changes to Defendants' Proposed Instruction 60 invite the jury to award profits for the sale of the Post-Sky Program regardless of whether the Post-Sky Program infringes the Sky Program.

This court believes, based on a review of the parties' respective positions and the law applicable thereto, that Defendants' Proposed Instruction 60 is an accurate statement of the law. Consequently, this court rejects plaintiff's proposed changes to Defendants' Proposed Instruction 60. While plaintiff's present proposed instructions are an improvement over her previously-rejected instructions, in that they do not instruct the jury that a program may infringe another even if the program is not substantially similar, they still allow the jury to award profit damages to plaintiff based on the sales of a non-infringing program. Such a result is not warranted by the statute. While

2

Plaintiff's proposed revised instructions are taken from the language of the statute, Defendants' Proposed Instruction 60 is a more complete and understandable statement of the law as interpreted by the courts. Under the Copyright Act, profits are not "attributable to" an infringement unless the work which is either sold or otherwise used to acquire profits infringes on the plaintiff's copyright. Defendants' Proposed Instruction 60 makes this point clear, while plaintiff's proposed changes to Defendants' Proposed Instruction 60 and Plaintiff's Proposed Instruction 27 (Revised) do not.

Plaintiff argues she is entitled to all profits which are "attributable to" defendants' allegedly unauthorized downloading of her Sky Program, regardless of whether the resulting Post-Sky Program is substantially similar to her original Sky Program. In other words, plaintiff argues that the jury should determine what profits are "attributable to" the alleged initial infringement of downloading the Sky Program on to a computer, without the benefit of an instruction that sales of the Post-Sky Program cannot be "attributable to" the alleged downloading infringement unless the Post-Sky Program was substantially similar the Sky Program. While the statute allows recovery for "any profits of the infringer that are attributable to the infringement" 17 U.S.C. § 504(b), it does not warrant recovery for profits in which the item sold or otherwise used to acquire profits is not a copyright infringement of the original work. In order for a work to be infringing, it must be either an exact copy, or it must be shown that the alleged infringer: (1) had access to the copyrighted work, and (2) that the works are substantially similar. Wildlife Express Corp. v. Carol Wright Sales, Inc., 18 F.3d 502, 508 (7th Cir. 1994); Alberto-Culver Co., 466 F.2d 705, 707 (7th Cir. 1972). Here, it is undisputed that the Post-Sky Program is not an exact copy of the Sky Program and that defendants had access to the copyrighted material. Therefore, in order for plaintiff to recover profits for defendant's sale of the Post-Sky Program, plaintiff will have to prove that defendants' Post-Sky

3

Program was substantially similar to plaintiff's Sky Program.

Plaintiff's proposed instructions, by contrast, would allow plaintiff to recover profits from the sale of the Post-Sky Program even if it does not infringe plaintiff's copyright in the Sky Program. Plaintiff has cited no case in which such a recovery has been allowed, and the relevant authority suggests otherwise. First, the Copyright Act does not allow for recovery under the "fruit of the poisonous tree" theory that a plaintiff may recover all profits following and related to an initial infringement, even if the later work does not infringe on the original. See, e.g., Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 538 (5th Cir. 1994) (rejecting part of district court's order that enjoined not only infringing product but also "all future modifications and revisions" because "the most [the district court] could enjoin were future modifications and improvements of the [defendant's product] that are substantially similar to [the plaintiff's] copyrighted Materials."). While plaintiff does not label her proposed instructions under a "fruit of the poisonous tree" theory, the result of allowing plaintiff's proposed instructions could be identical to a "poisonous tree" result -- recovery for the sale future works that are not substantially similar to the original.[1] Second, courts unanimously require plaintiffs to prove substantially similarity between the original work and the allegedly infringing work to recover for infringement. See Wildlife Express Corp., 18 F.3d at 508; Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d at 707. If plaintiff were to recover profits from the sale of the Post-Sky Program without proving that it is substantially similar to her Sky Program,

---

[1] While Leadership Software, 12 F.3d 527, arose in an injunction context, the result would have been different if plaintiff's proposed instructions were the law. The Fifth Circuit in Leadership Software presumably would not have reversed the injunction if the plaintiff would have been able to recover profits at trial for the sale of all items "attributable to" the original infringement, regardless of whether the items were themselves infringing.

4

she would, in effect, recover profits for the sale of a work that does not infringe her copyright. Such relief is not provided in the Act and would constitute an end-run around the Act's mandate that copyright owners may recover profits only after proving that the work in question is an infringement -- either an exact copy of or substantially similar to their copyrighted work. That defendants may have viewed or studied plaintiff's program is irrelevant if defendants' resulting work is not substantially similar to plaintiff's. See DSC Communications Corp. v. DGI Tech., Inc., 898 F. Supp. 1183, 1189 n.3 (N.D. Tex. 1995) ("[T]he test of copyright infringement has two requirements, access and substantial similarity. . . . while DSC may succeed in proving access because DGI is not using the preferred 'clean room' method of development, DSC must still prove substantial similarity between its firmware and the DGI firmware.)

Plaintiff points to Judge Posner's opinion in Deltak, Inc. v. Advanced Systems, Inc., 574 F. Supp. 400 (N.D. Ill. 1985) (Posner, Circuit Judge, sitting by designation), vacated on other grounds 767 F. 2d 357 (7th Cir. 1985), for the proposition that a plaintiff may recover all "indirect" profits based on the use of an infringing item even if the defendant did not actually sell the infringing item. Plaintiff argues that Deltak means that she may recover all indirect profits flowing from the initial alleged infringement of downloading the Sky Program to a computer regardless of whether the infringing document was used to acquire profits. However, in Deltak, the defendant had copied the infringing document in toto and then used it in acquiring profits, albeit as a sales tool rather than as a product. There was no question that the defendant had copied (thereby infringed) plaintiff's copyrighted material, and then used that infringing material to sell its products. Here, by contrast, plaintiff is claiming that she is entitled to profits for the "use" of the Sky Program even if the resulting Post-Sky Program does not infringe her copyright in the Sky Program. Deltak does not stand for that

proposition; it merely held that a plaintiff may recover profits for infringing uses of copyrighted material other than the actual sale of the infringing material. Here, the "use" complained of -- the sale of the Post-Sky Program -- was not infringing unless the Post-Sky Program was substantially similar to the Sky Program.[2] By definition, no profits are "attributable to" the sale of the Post-Sky Program unless it was substantially similar to the Sky Program. As explained above, a non-substantially similar sale or other use of copyrighted material is not an infringing use. Defendants' Proposed Instruction 60 adequately instructs the jury on this point; plaintiff's proposed modification to that instruction does not.

Deltak also does not provide support for Plaintiff's Proposed Instruction 27 (Revised) that a copyright owner is entitled to "an infringer's direct and indirect profits which are attributable to that infringement" in this case. Profits from the creation and subsequent sale of the Post-Sky Program are "direct," and there is no "indirect" profits (such as using copyrighted material as a sales device) alleged as to the Post-Sky Program. The only possible "indirect" profits would be from defendants' studying the Sky Program for its ideas, and then creating the Post-Sky Program from that study. Profits from such a "use" are not recoverable unless the Post-Sky Program is substantially similar (infringes) on the Sky Program, in which case the profits from the use are "direct." Because there are no cognizable "indirect" uses of the Sky Program alleged in this litigation, plaintiff's reference in Proposed Instruction 27 (Revised) to "indirect profits" is potentially misleading and confusing to the

---

[2]There is no allegation by plaintiff that defendants "used" the Sky Program in any way other than to study it and to create the Post-Sky Program from it. Because studying a program alone is not an infringement, the only possible infringing "use" of the Sky Program is defendants' creation and sale of the Post-Sky Program. As such, the jury need not be informed, consistent with Deltak, that other "uses" of an infringing document, such as a sales device, may infringe a copyright.

6

jury.

In the end, plaintiff's proposed instructions put too much weight on defendants' initial undisputed verbatim downloading of the Sky Program on to a computer, suggesting that any profits which follow that copying can be "attributable to" the alleged infringement, whether or not the infringing material is ever sold or otherwise used. For the reasons stated, Plaintiff's Proposed Instruction 27 is rejected in its current form. As it now reads, Plaintiff's Proposed Instruction 27 does not properly instruct the jury as to what must be found for defendants' profits to be considered "attributable to" each alleged infringement. Plaintiff's Proposed Instruction 27 (Revised) must be modified to delete the reference to "indirect profits," at least insofar as "indirect profits" refers to the loading of the Sky Program on to a computer. Plaintiff's Proposed Instruction 27 (Revised) also must be modified to inform the jury that profits from the sale of a program are not "attributable to an infringement" unless the program sold is substantially similar to the original. Plaintiff's proposed modification to defendants' Proposed Instruction 60 is also rejected. Defendants' Proposed Instruction 60 is accepted in its current form. However, Plaintiff's Proposed Instruction 18A (Revised) is acceptable. It merely instructs the jury as to how intermediate copying may be an infringement, and does not concern the calculation of profits "attributable to" that alleged infringement. The modifications which this court is requiring to Plaintiff's Proposed Instruction 27 (Revised), along with Defendants' Proposed Instructions 55, 56, and 60 will appropriately instruct the jury as to how to determine if defendants' intermediate copying infringed plaintiff's copyright and, if so, how to calculate damages for the infringement.

For the reasons stated, Plaintiff's Proposed Instruction 27 (Revised) and proposed modification to Defendants' Proposed Instruction 60 are refused. Plaintiff's Proposed Instruction 18A (Revised) is accepted.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: October 27, 2000

# JURY INSTRUCTION NO. 18A (REVISED)
# INFRINGEMENT BY INTERMEDIATE COPYING - DEFINED

When an individual copies a copyrighted computer software program onto his computer without the authorization of the copyright owner, such copying constitutes copyright infringement.

Price Waterhouse and Computer Language Research have admitted that Computer Language Research gave Patrick McNerthney a copy of the SKY REVUP program without the permission of Liu or the SKY programmers. It is further admitted that Mr. McNerthney copied the entire SKY program onto his computer to study how it functioned.

Therefore, if you find that Ms. Liu owns a valid copyright for the China REVUP computer program, and further, that Computer Language Research and Mr. McNerthney's actions do not constitute a fair use as I will describe to you, then I instruct you that you must also find that Price Waterhouse and Computer Language Research infringed Ms. Liu's copyright when Mr. McNerthney copied the SKY REVUP program onto his computer.

Stenograph .L.L.C. v. Bossard Associates, Inc. 144 F. 3d 96 (C.A.D.C. 1998); Atari Games Corp. v. Nintendo of America 957 F. 2d 832, 843-844 (Fed. Cir. 1992); DSC Communications Inc. v. DGI Technologies, Inc. 898 F. Supp. 1183, 1193-94 (N.D. Texas, 1995); (N.D. Texas, 1995); ISC-Banker Ramo Corp. v. Altech, Inc. 765 F. Supp. 1310, 1332 (N.D. Ill. 1990); Burton's Jury Instructions in Intellectual Property Cases § 40:50:02 (1990).

B-1

# JURY INSTRUCTION NO. 27 (REVISED)
## DEFENDANT'S PROFITS

Under the copyright statute, a copyright owner is entitled to an infringer's direct and indirect profits which are attributable to that infringement. Ms. Liu's damages claim is based on the amount of profits, if any, which are attributable to Price Waterhouse and Computer Language Research's alleged infringements.

If you find that Liu has proven by a preponderance of the evidence that Price Waterhouse and/or Computer Language Research have infringed her copyright, then you must determine what profits are attributable to any of the infringements which Liu has proven. In establishing these profits, the law requires that Liu prove only gross revenues which are attributable to these infringements.

In this case, Liu has identified five (5) alleged infringements of her copyright:

1) The transfer of the object code from Price Waterhouse to Computer Language Research on December 2, 1995;

2) Computer Language Research's complete copying of the SKY REVUP program in its accused InSource TMS program from December, 1995 thru November, 1996;

3) Computer Language Research's transfer of the SKY REVUP program to Patrick McNerthney in January, 1996;

4) Mr. McNerthney's loading of the SKY program onto his computer in January, 1996; and

5) Computer Language Research's licensing of its post-SKY REVUP program, which Liu contends is substantially similar to the SKY REVUP program.

1

B-2

Price Waterhouse and Computer Language Research have admitted that Price Waterhouse received $11.5 million from Computer Language Research for the sale of certain assets including the China REVUP program. Additionally, Price Waterhouse and Computer Language Research admittedly entered into a five (5) year agreement for management services having a total value of $10.5 million. Lastly, Price Waterhouse and Computer Language Research also admit to revenues during 1995-2000 from customers for the accused InSource TMS program of $64,293.046**

From the amount of gross revenue, Price Waterhouse and Computer Language Research may deduct revenues from the sale or licensing of assets from Price Waterhouse and Computer Language Research which are attributable to factors other than the copyrighted program. Additionally, Price Waterhouse and Computer Language Research may deduct certain direct costs of the various InSource TMS windows programs, as manufacturing costs and advertising costs. However, Price Waterhouse and Computer Language Research bear the burden of proving the amount and reasonableness of all deductions by a preponderance of the evidence.

Overhead expenses are deductible costs only if Price Waterhouse and/or CLR prove (1) that each item of overhead was actually incurred in the production, distribution or sale of the accused InSource TMS programs; and (2) that these overhead costs have been allocated using a fair and acceptable formula..

*Revenue figures through October 1, 1998

2

B-3

Furthermore, if you find that Price Waterhouse and Computer Language Research's infringement was willful, then Price Waterhouse and Computer Language Research are not entitled to any deductions for overhead.

17 USC § 504(b); <u>Frank Music Corporation v. Metro-Goldwyn-Mayer, Inc.</u> 772 F. 2d 505, 515 (9th Cir. 1985), <u>My Favorite Company v. Globos International, Inc.</u> C.A. 87-10198-MMP (N.D. Fla. 1991); <u>Jarvis v. A & M Records</u> 827 F. Supp. 282 (D.N.J. 1993); Burton's <u>Jury Instructions in Intellectual Property Cases</u> § 40:81:13 (1998).

B-4

## Damages – Substantial Similarity Requirement
## Jury Instruction No. 60

If you find that Patrick McNerthney's use of NewRevUp32 was not a fair use, plaintiff may not recover profits arising from the sale of McNerthney's 1996 version of RevUp32 without also proving that his version was substantially similar to the derivative NewRevUp32 in which Liu claims a copyright.

Authority: *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997), *cert. denied*, 523 U.S. 1021 (1998); *CMM Cable Rep. Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1514 (1st Cir. 1996); *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 460 (11th Cir.), *cert. denied*, 513 U.S. 1062 (1994); *Gates Rubber Co. v. Bando Chemical Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993); *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 701 (2d Cir. 1992); *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 941-942 (8th Cir. 1992); *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 290 (3d Cir.), *cert. denied*, 502 U.S. 939 (1991); *Dawson v. Hinshaw Music Inc.*, 905 F.2d 731, 732-733 (4th Cir.), *cert. denied*, 498 U.S. 981 (1990); *Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc.*, 821 F.2d 800, 806 (D.C. Cir. 1987); *Wickham v. Knoxville Int'l Energy Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984); *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 707 (7th Cir. 1972).