# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3093 | **DATE** | 2/27/2001 |
| **CASE TITLE** | LIU vs. PRICE WATERHOUSE et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Pursuant to Memorandum Opinion and Order entered this day, plaintiff's motion for judgment as a matter of law under Fed. R. Civ. P. 50(b) or for a new trial under Rule 59 is denied in its entirety. Defendants' motion for remittitur is granted. The jury's verdict on all claims shall stand. The jury's award of damages to Yang on her breach of contract claim against Price Waterhouse is reduced from $600,000.00 to $264,000.00. Yang's motion for prejudgment interest is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB 28 2001 | |
| | Notified counsel by telephone. | | date docketed | 258 |
| | Docketing to mail notices. | | C.S. | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/27/2001 | |
| | | | date mailed notice | |
| JS | courtroom deputy's initials | 01 FEB 28 AM 7: 59 | JS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| XU LIU, | ) | |
| | ) | |
| Plaintiff-Counterdefendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PRICE WATERHOUSE LLP and | ) | |
| COMPUTER LANGUAGE RESEARCH, INC., | ) | |
| | ) | |
| Defendant-Counterplaintiffs. | ) | No. 97 CV 3093 |
| | ) | |
| PRICE WATERHOUSE LLP and | ) | |
| COMPUTER LANGUAGE RESEARCH, INC., | ) | |
| | ) | |
| Third-Party Plaintiffs- | ) | |
| Counterdefendants | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| XIAOMEI YANG | ) | |
| | ) | |
| Third-Party Defendant- | ) | |
| Counterplaintiff | ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

At the conclusion of a ten-day jury trial, the jury reached a verdict as to each of the parties'

claims. The jury found against plaintiff Xu Liu on her claim of alleged copyright infringement by

defendants Price Waterhouse LLP ("Price Waterhouse") and Computer Language Research, Inc.

("CLR"). The jury found in favor of counterplaintiffs Price Waterhouse and CLR on their

1

counterclaim of alleged copyright infringement by Liu and awarded $200 in damages to Price Waterhouse and CLR. The jury also found in favor of Price Waterhouse and CLR on their claim of alleged contributory infringement by third-party defendant Yang and awarded $200 in damages to Price Waterhouse and CLR. The jury found against Price Waterhouse and CLR on their counterclaim and third-party claim of alleged trade secret misappropriation by Liu and Yang. The jury found in favor of Price Waterhouse and CLR on their third-party claims of alleged breach of contract, breach of fiduciary duty, and conversion of property by Yang, but awarded no damages. The jury also found in favor of Yang on her counterclaim against Price Waterhouse and CLR for breach of contract and awarded her $600,000 in damages. This court entered judgment on the jury's verdict on November 22, 2000.

All the parties filed timely motions for judgment as a matter of law under Fed. R. Civ. P. 50(a) at trial. Yang and Liu have now filed a renewed motion for judgment as a matter of law under Rule 50(b), or, in the alternative, for a new trial under Rule 59 and a motion for an award of prejudgment interest. Price Waterhouse and CLR have filed a motion for a remittitur of the $600,000 in damages awarded to Yang on her breach of contract claim. For the following reasons, Yang and Liu's renewed motion for judgment as a matter of law or for a new trial is DENIED. Yang and Liu's motion for prejudgment interest is also DENIED. Price Waterhouse and CLR's motion for remittitur is GRANTED.

## BACKGROUND AND FINDINGS BELOW

This litigation arises out of an agreement memorized in a letter dated June 7, 1995 from Price Waterhouse to Yang ("letter agreement") which authorized Yang to go to China in order to find computer programers to speed up one of Price Waterhouse's tax programs, the RevUp 32 Program

2

("the Pre-China RevUp Program" or "Pre-China Program"). The present motions largely re-hash issues of law which this court addressed before the trial in rejecting the parties' motions for summary judgment. The facts are throughly detailed in this court's orders denying various motions for summary judgment. See Liu v. Price Waterhouse LLP and Computer Language Research, 1999 WL 1012452 (N.D. Ill. Oct 19, 1999); Liu v. Price Waterhouse LLP, 2000 WL 1644585 (N.D. Ill. Oct 30, 2000).

By way of brief summary, the evidence at trial showed that Yang did go to China, and employed programers from the Sky Company ("the Sky Programers") who sped up the Pre-China Program by at least 250%, resulting in a derivative work ("the China RevUp Program" or "China Program"). The parties disputed who owned the copyright in that work under the June 7, 1995 letter agreement. Price Waterhouse took possession of the China RevUp Program and later sold it to CLR. Patrick McNerthny, working for CLR, later created another version of the RevUp Program ("Post-China RevUp Program"). The Sky Programers sold their alleged rights in the China Program to Liu, Yang's daughter. Liu registered a copyright in the China Program and filed this action for infringement seeking millions of dollars in damages stemming from Price Waterhouse's sale and use of the China RevUp Program.

In addition to reaching a verdict on the parties' claims, the jury made specific findings of fact by answering a series of special interrogatories. Those findings of fact are as follows: (1) in the June 7, 1995 letter agreement, the parties intended that the China RevUp Program, including the copyright, would become the property of Price Waterhouse upon completion of the project; (2) the RevUp 32 project, as contemplated by the letter agreement, was completed; (3) the Sky Programers were the sole and exclusive authors of the enhancements in the Pre-China RevUp Program made in China; (4)

3

Yang was a Price Waterhouse employee while she was in China in 1995; (5) Yang was not a joint author of any portion of the China RevUp Program; (6) Liu did not knowingly fail to advise the Copyright Office of Price Waterhouse's claim of ownership in the China RevUp Program when she applied for its copyright; (7) Patrick McNerthy's Post-China RevUp Program is not substantially similar to the China RevUp 32; (8) the three employment contracts Yang signed in 1992, 1994, and 1996 obligated Yang to use her best efforts to protect Price Waterhouse's copyright interests in the China RevUp Program while she was employed by Price Waterhouse; (9) Yang did not use her best efforts to protect Price Waterhouse's copyright interests in the China RevUp Program while she was employed by Price Waterhouse; and (10) some part of the China RevUp is a "work of authorship, improvement or idea" -- as defined in Yang's employment agreements -- that Yang conceived or made in the course of her employment with Price Waterhouse, whether alone or with others.

## ANALYSIS

I.  Price Waterhouse & CLR's Motion for a Remittitur

The jury found that Price Waterhouse breached its contract with Yang, and awarded her $600,000 in damages on that claim. Price Waterhouse argues that the jury's award must be reduced because it is not supported by the evidence.

This case is controlled by Illinois law. In Illinois, "the evidence need only to tend to show a basis for the computation of damages with a fair degree of probability." Medcom Holding Co. v. Baxter Travenol Lab., Inc., 106 F.3d 1388, 1398 (7th Cir. 1997). A trial judge may vacate a jury's verdict for excessiveness only when the award was "monstrously excessive" or the award has "no rational connection to the evidence." DeBiasio v. Illinois Cent. R.R., 52 F.3d 678, 687 (7th Cir. 1995).

4

Here, the only evidence Yang submitted in support of her breach of contract damages was the invoice to Price Waterhouse for $264,000. Yang's counsel requested only $264,000 in his closing argument, explaining that Yang was entitled to $1,000 for every percentage point she sped up the RevUp Program, and that it was uncontested that Yang sped up the program by 264 per-cent. Finally, Yang consented to the $264,000 figure in the jury instructions, which stated: "Ms. Yang claims that Price Waterhouse breached its contract with her and seeks $264,000 for the defendants alleged failure to pay."

Nevertheless, Yang argues that the jury could rationally find that she was entitled to additional money because of evidence of tortious conduct by Price Waterhouse found in the record. Yang's "tortious conduct" argument is without merit for two reasons. First, it is not sanctioned by Illinois law. Second, even if it were a viable theory under Illinois law, Yang has not alleged, much less pointed to facts in the record, which prove that Price Waterhouse committed any tort against her.

Yang argues that "[w]hile damages in excess of the claimed contractual injury are not generally allowed under Illinois law, exceptions are permitted where evidence of tortious conduct is presented at trial." In support, Yang cites <u>Hardin, Rodriguez & Boivin Anesthesiologists, Ltd. v. Paradigm Ins. Co.</u>, 962 F.2d 628, 638-39 (7th Cir. 1992). However, that case does not stand for the proposition for which Yang cites it. Instead, <u>Hardin</u> concerns the exception under which punitive damages are available on a contract claim -- where the defendant is also found to have committed an independent tort, separate from the breach of contract.

Even if this case fell within the <u>Hardin</u> reasoning, however, the only tort Yang comes close to alleging is tortious interference with contract: "PW/CLR's failure to pay the specified amount to Yang 30 days after testing was completed on the China RevUp Program tortiously interfered with the

contractual relationship between Yang and the [Sky Company]." (Yang's Mem. in Opp. to PW/CLR's Motion for a Remittitur.) Despite that assertion, Yang does not even try to argue that Price Waterhouse committed all the elements of tortious interference with contract, i.e., that Price Waterhouse "completed" the tort, rather than just behaved poorly. Even if Yang could show that Price Waterhouse engaged in tortious interference with contract, her claim fails because, unlike in Hardin, where the plaintiff alleged and the jury was instructed on the elements of common law fraud, Yang never alleged tortious interference with contract, and the jury was never instructed on its elements. There is thus no basis upon which to conclude that the damages awarded over and above the contract amount were punitive.

The remainder of Yang's argument is that the contract damages may be enhanced because of Price Waterhouse's generally unpleasant behavior. Specifically, Yang argues that Price Waterhouse harmed her ability to perform other projects with the Sky Programers, threatened to "ruin her" if she sued Price Waterhouse, and unlawfully conditioned her vacation pay on a waiver of contract claims against Price Waterhouse. Presumably, Yang's argument is that such behavior may serve to enhance the damages on a contract claim even if it does not rise to the level of an independent tort. Not surprisingly, Yang cites no case law in support of this position. Nor could she, because even Hardin recognizes only that a plaintiff may collect damages above the contract amount if she proves that the defendants engaged in a separate, independent tort. Not only does Yang not argue that Price Waterhouse's acts constitute separate, independent torts, Yang did not ever allege that the acts rose to the level of recognized torts of intentional infliction of emotional distress, assault, or fraud.

In addition, plaintiff consented to the $264,000 figure by not objecting to its inclusion in the jury instructions. Under the law of the Seventh Circuit, "[w]hen parties do not object to jury

instructions, these instructions generally become the law of the case." Jabat, Inc. v. Smith, 201 F.3d 852, 857 (7th Cir. 2000). Once the law of the case is settled, the parties can only argue that the jury did not properly apply the instructions to the facts. Id. By permitting an instruction to be given which clearly limited Yang's contract damages to $264,000, Yang waived her right to claim that damages in excess of the request were warranted. See id.

For these reasons, plaintiff has not alleged, much less shown that the jury could have rationally concluded, that Price Waterhouse engaged in any torts separate and independent of the contract claim. In the language of the Seventh Circuit, there was "no rational connection" between the jury's $600,000 award (or any amount greater than $264,000) and the evidence presented on Yang's contract claim. Accordingly, Price Waterhouse's motion for a remittitur must be granted.

II.     <u>Liu and Yang's Renewed Motions for Judgment as a Matter of Law, Or, in the Alternative, for a New Trial</u>

      A.     <u>Liu's Infringement on Price Waterhouse's Copyright</u>

As noted, the jury found that Price Waterhouse, not the Sky Programers or Liu, held a valid copyright in the China Rev-Up Program. The jury also found that Liu infringed that copyright and awarded Price Waterhouse $200 for the infringement. Liu and Yang argue that no reasonable jury could have found that Price Waterhouse owned the rights in the China Program or that Liu infringed upon those rights by claiming a copyright in the derivative work.

      1.     <u>Ownership of the Copyright Rights in the China RevUp Program</u>

Liu and Yang argue that they are entitled to judgment as a matter of law because the Sky Programers were authorized to prepare the China RevUp Program, a derivative work, and it is undisputed that the Sky Programers never transferred ownership of the copyright to the China RevUp

to Price Waterhouse. Liu and Yang reason that because the Sky Programers lawfully prepared the derivative program, they were the authors, and therefore holders of the copyright under § 103(a) of the Copyright Act. 17 U.S.C. § 103(a). Because ownership vests initially with the Sky Programers, Liu and Yang argue, a written assignment was necessary under § 204 of the Copyright Act to transfer copyright rights in the China RevUp Program to Price Waterhouse. 17 U.S.C. § 204. Liu and Yang argue that while Yang and Price Waterhouse may have agreed that the China RevUp Program would become the property of Price Waterhouse upon completion of the project, the Sky Programers, as authors of the derivative work, never agreed to assign their copyright in the program to Price Waterhouse. Liu and Yang continue that Yang could not have assigned the copyright on the Sky Programers' behalf because there was no evidence presented that Yang was the agent of the Sky Programers.

Price Waterhouse counters by arguing that there is no need to resort to the Copyright Act to determine whether there was a proper transfer of the copyright from the Sky Programers to Price Waterhouse because, as the jury found, under the June 7, 1995 letter agreement, the Sky Programers never had any rights in the China RevUp Program to transfer. The jury found that under the June 7, 1995 letter agreement pursuant to which Yang recruited the Sky Programers to enhance the RevUp Program, the copyright in the derivative work was to become the property of Price Waterhouse upon completion of the project. The jury also found that the project was completed. Accordingly, Price Waterhouse argues, the China RevUp Program was the property of Price Waterhouse as soon as the project was competed, and there was no need for the Sky Programers to transfer ownership in the China RevUp Program to Price Waterhouse.

The heart of the parties argument centers upon what is required under the Copyright Act to

vest ownership of copyright rights in a derivative work with a party other than the work's author. Price Waterhouse views the June 7, 1995 letter agreement as a license to prepare a derivative work which must be interpreted, just as any other contract, to determine the intention of the parties regarding the respective rights of the author of the underlying work and the author of the derivative work. Under this view, owners of the right to prepare derivative works may limit and condition the author of the derivative work's right to use the derivative work, including limiting the right to claim a copyright in the derivative work, even if the license is not signed by the author of the derivative work and even if the license is not explicit in prohibiting the author of the derivative work from claiming a copyright in the derivative work. Liu and Yang, on the other hand, maintain that the rights to a derivative work may not vest in nor transfer to anyone other than the author of the derivative work without an explicit assignment of the copyright by the authors of the derivative work (or their agent) in accordance with § 204 of the Copyright Act.

Under copyright law, the holder of copyright rights in an original work may set conditions on any license to prepare a derivative work. It is an "axiomatic copyright principle that a person may exploit only such copyrighted literary material as he either owns or is licensed to use." Stewart v. Abend, 495 U.S. 207, 223, 110 S. Ct. 1750 (1990). It is also undisputed that a "use" of copyrighted material which exceeds the scope of the license constitutes an infringement. NFLC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 235 n.5 (7th Cir. 1995). Accordingly, Price Waterhouse could have limited various uses of the derivative program, and the Sky Programers and Liu would have violated the license, thereby infringing Price Waterhouse's copyright in the Pre-China Program, if they engaged in any "uses" not allowed by the license. The questions, then, are what is required to prohibit the author of a derivative work from claiming a copyright in the work, and whether claiming

9

a copyright in a work is a "use" within the meaning of the law. Liu and Yang, not surprisingly, argue that a license or other contract must be explicit in assigning rights in the derivative work to a party other than the author, and that claiming a copyright in a work is not a "use" within the meaning of the law. Price Waterhouse counters that prohibitions on claiming a copyright in a derivative work may be established just like any other limitation on a use of a work, and that claiming a copyright is a use like any other.

Plaintiffs argue that, under copyright law, the jury improperly looked to the letter agreement to determine what "the parties" intended, because only an explicit assignment of the Sky Programers' rights signed by the Sky Programers would be sufficient to vest ownership of the copyright in Price Waterhouse. The bulk of the authority, however, does not support Liu and Yang's position. The cases cited by their counsel all concern situations under which one party undisputedly authored and held ownership rights in the work, and the issue was whether that party had transferred those rights to another. See, e.g., Effects Associates, Inc. v. Cohen, 908 F.2d 555, 556-57 (9th Cir. 1990) (explaining that work at issue was not a work made for hire, so that copyright vested in the author in the absence of an agreement to the contrary); Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 412 (7th Cir. 1992) (same). Here, by contrast, the dispute turns upon which party was to initially hold the rights in the derivative work.[1]

---

[1]The difference between the work for hire doctrine, under which the party creating the work (if not an employee) must explicitly assign his or her rights to the party commissioning its creation, 17 U.S.C. § 201(b), and derivative work licenses, is that the author of a derivative work must get permission to create the derivative work. A derivative work, by definition, is a work based upon a preexisting work, 17 U.S.C. § 101, and the author of a derivative work must either have or acquire the right to use the original preexisting work. A work for hire, by contrast, is composed of original material and could be independently created and copyrighted by the author. As such, it makes sense to require an explicit transfer of ownership in works made for hire to protect the true author's rights

The bulk of the authority suggests that a license may prevent an author of a derivative work from claiming a copyright in that work, such that claiming a copyright is an infringement of the original work's rights. The bulk of the authority also suggests that such a license need not explicitly state that the copyright in the derivative work will be the property of the original work's owner, and need not be signed by the author of the derivative work in order to be effective. See, e.g., Gracen v. Bradford Exchange, 698 F.2d 300, 303 (7th Cir. 1983) ("Even if she was authorized to exhibit her derivative works, she may not have been authorized to copyright them. Bradford was licensed to use MGM's copyright in its series of collectors' plates but not to copyright the derivative works thus created.") (emphasis added).[2] Even Nimmer on Copyrights, which questioned the scope of Gracen's dicta, noted "[o]f course, a license may contractually preclude the licensee from obtaining a copyright in a licensed derivative work." 1 Nimmer on Copyright § 3.06 at 3-34.23 n.14 (Perm. Ed. 1997). Expanding on this reasoning, the most recent version of Nimmer states "if the pertinent agreement

in his or her work. A derivative work author, by contrast, is by definition working within the confines of his or her license to create that work and is bound not to infringe the rights of the original work's owner by exceeding the scope of that license. In the derivative work context, unlike the work for hire context, there are competing interests of two different authors to consider: the original work owner, whose ability to prepare and authorize others to prepare derivative works may be harmed by allowing derivative work authors to copyright the derivative works, and the derivative work authors, who have an interest in protecting their own rights in the new material they contribute to the original work, just like all other authors.

[2] The scope of Gracen's dicta has been explored at length by this court in addressing defendants' motions for summary judgment. In those motions, this court rejected defendants' argument that the authorized author of a derivative work must have explicit permission from the owner of the original work to copyright the derivative work. This court stands by those rulings, but Gracen certainly does suggest that a license to prepare a derivative work may or may not include the right to claim a copyright in the derivative work. If a license provides that the derivative work, including its copyright, shall become the property of the original work's author, as the jury found here, then the license does not authorize the author of a derivative work to claim a copyright in that work.

11

between the parties affirmatively bars the licensee from obtaining copyright protection even in a licensed derivative work, that contractual provision would appear to govern." 1 <u>Nimmer on Copyright</u> § 3.06 at 3-34.26 (Perm. Ed. 2000).

This case is precisely in line with those situations contemplated by the <u>Nimmer</u> treatise and the <u>Gracen</u> court. The June 7, 1995 letter gave Yang and the Sky Programers a license to prepare a derivative work. That license was ambiguous as to who would have the right to copyright the derivative work. Liu and Yang may be correct that if the license had said nothing at all about copyrights in the derivative work, copyright would have vested in the Sky Programers as the authors of that derivative work. The license did speak to ownership rights, however, and the jury resolved the ambiguity in the license by finding that the copyright in the derivative work was to vest with Price Waterhouse. As such, the jury found, consistent with <u>Nimmer</u>'s hypothetical, that the pertinent agreement between these parties provided that Price Waterhouse would hold copyright protection in the derivative work, and thus barred the Sky Programers or Liu from claiming that protection. That contractual agreement as found by the jury trumps the Copyright Act's presumptive vesting of copyright protection with the author of the derivative work.

In this sense, the jury found that the parties intended to alter the default rules of copyright ownership by contract just as the Copyright Act alters the default rules for works made for hire. As a work made for hire vests copyright with the person who authorizes the work, rather than the usual creator of the work, so too here the parties altered the default rules of the Act with a contract to prepare a derivative work, rather than with an employment contract. This court sees no reason why factfinders should be permitted to look to extrinsic evidence to determine if a work was "for hire" under an employment contract, but not be permitted to consider extrinsic evidence to determine if a

license provided that a copyright in a derivative work was to vest with a party other than the author. For example, had Yang been an author of the China Program, the jury would have had to determine whether Yang was an employee working within the scope of her employment with Price Waterhouse at the time she created it.[3] In making that determination, the jury would consider the intent behind the June 7, 1995 letter agreement, among other things. This court finds nothing in the plain language or the policies of the Copyright Act which suggests that a different result should occur merely because, as contemplated by the letter agreement, Yang found third parties to create the derivative work. While the Sky Programers were not parties to the license, the letter agreement license still sets the parties' respective ownership rights and obligations, and a jury was properly permitted to consider extrinsic evidence to interpret its meaning.

This court also rejects Liu and Yang's argument that limiting the right to claim a copyright in a derivative work is somehow different, or requires a clearer statement of intent, than other limitations on "uses" of a copyrighted work. This court finds Liu and Yang's argument that the letter agreement was sufficient to authorize the Sky Programers to prepare the derivative work, even though the Sky Programers did not sign it, but was not sufficient to limit the Sky Programers' rights to claim a copyright in the derivative work to be internally inconsistent. A license may limit any number of statutory rights in a work, and a party may infringe on that license even without knowledge that the license exists. See NFLC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 235 n.5 (7th Cir. 1995) (exceeding scope of license is infringement); 17 U.S.C. § 504 (providing remedies for innocent

---

[3]The jury did find that Yang was an employee of Price Waterhouse, but the jury also found that she was not a joint author of the China RevUp Program, and there was no finding or evidence that Yang was an agent for the Sky Programers, the authors of the derivative China RevUp Program, so the work for hire doctrine does not come into play in this case.

infringement). While the Copyright Act makes authors of derivative works the presumptive owners of copyright rights in their contributions, it also allows parties to adjust those rights by contract. Here, the jury found that the parties to the letter agreement did just that -- agreed that Price Waterhouse would hold the copyright in the derivative work. Because of the ambiguity in the letter agreement, it was necessary and proper for the jury to consider "the parties" intent in entering into the letter agreement in order to determine the respective rights of Price Waterhouse, Yang, and the subsequent authors of the derivative work, even though those subsequent authors, the Sky Programers, did not sign the letter agreement.

2.   <u>Liu's Infringement of Price Waterhouse's Copyright in the China RevUp Program</u>

Liu argues that no rational jury could have found that she infringed on Price Waterhouse's copyright rights for three reasons: (1) the only "use" Liu made of the China RevUp Program was to file a copyright application, (2) Price Waterhouse failed to meet the statutory prerequisites for bringing an infringement action by failing to produce a valid copyright registration or evidence of an attempt to obtain copyright registrations for the pre-China and China RevUp Programs at trial, and (3) statutory damages cannot be awarded for infringement unless the copyright was registered before the infringement occurred.

Liu's infringement argument is easily disposed of. As noted above, any use which exceeds the scope of a license constitutes infringement. <u>See</u> <u>NFLC, Inc. v. Devcom Mid-America, Inc.</u>, 45 F.3d 231, 235 n.5 (7th Cir. 1995). Here, the jury found that Price Waterhouse, and only Price Waterhouse, was to own the copyright in the derivative work. A necessary corollary to that finding is that the Sky Programers, and therefore Liu, did not have the right to claim a copyright in the work. By registering the copyright, Liu exceeded the scope of the derivative work license and therefore

infringed Price Waterhouse's copyright.

The Sky Programers can be held liable for infringement even though they were not parties to the license. Even innocent parties may be liable for infringement, including exceeding the scope of a license. See 17 U.S.C. § 504 (providing different remedies for willful and innocent infringements); 17 U.S.C. § 501 (providing that "anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright or right of the author, as the case may be"). An innocent party, by definition, is not aware of limitations on use included within a license. The Sky Programers' and Liu's claims of ownership in the derivative China RevUp Program was not authorized by the license under which it was created because that license, per the jury's findings, provided that ownership would vest in Price Waterhouse. As such, Liu's act of claiming a copyright in the China Program on behalf of the Sky Programers was beyond the scope of the letter agreement license and therefore and infringement, even if an innocent one.

As for the copyright registration claims, Liu argues that Price Waterhouse's failure to produce a copyright registration form for the Pre-China and China Programs at trial is fatal the copyright infringement claim filed by Price Waterhouse against Liu.

The Copyright Act provides that "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim is made in accordance with this title." 17 U.S.C. § 411. No registration is necessary for a derivative work, so long as the underlying original work is registered. Montgomery v. Noga, 168 F.3d 1282, 1292-93 (plaintiff satisfied requirements of § 411 as to derivative work by registering original work because protected elements of the original registered work were present in the derivative work); 2 Nimmer on Copyrights § 7.16[B][2], 7-165 (Perm. Ed. 2000).

15

Here, Liu argues that <u>Norga</u> is of no use to Price Waterhouse because it failed to present evidence of the registration of the Pre-China RevUp Program.[4]  However, Liu's own copyright registration of the Post-China Program identifies Price Waterhouse's Pre-China Programs, registration numbers TX4045760 and TX4057660, as underlying works from which the China RevUp Program was derived. Liu argues that their identification of the Price Waterhouse registration numbers does not alleviate Price Waterhouse's burden to prove the elements of their claim, including a registered copyright in the Pre-China Program.  However, neither Yang nor Liu ever disputed, and all parties proceeded at trial under the assumption that, Price Waterhouse held a valid copyright in the Pre-China version of the program.  As such, Liu may not raise this issue for the first time in a post-trial argument; it has been waived by the failure to object at trial or to raise the issue in a Rule 50(a)(1) motion for judgment as a matter of law.  Fed. R. Civ. P. 50(a))(2) ("Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.").  Liu and Yang correctly notes that they have always disputed that Price Waterhouse and CLR hold a valid registered copyright in the China RevUp Program, but Price Waterhouse's undisputed registration of the underlying original work, the Pre-China RevUp Program, is sufficient basis upon which to maintain an infringement action both upon the Pre-China Program and the China

---

[4]Liu also argues that <u>Norga</u> is inapposite because they only claim a copyright in the new and original aspects of the China Program, not the parts which came from the underlying Pre-China Program.  In support, Liu cites evidence of the differences between the two programs.  Liu ignores similarities between the two programs. Regardless of the programs' differences, it is undisputed that the China RevUp Program also contains Price Waterhouse's protected expression from the Pre-China Program.

Program.[5] See Noga, 168 F.3d at 1292-93.

In addition, Liu's act of registering a copyright in the China RevUp Program was sufficient to allow Price Waterhouse's infringement claim to proceed. The plain language of § 411 speaks in the passive voice. It requires that a copyright in the work be registered, but does not require the person claiming the copyright or infringement thereof to register it. See Vapac Music Pub'g, Inc. v. Tuff 'N' Rumble Mgmt., No. 99 CV 10656 JGK, 2000 WL 1006257, at *2 (S.D.N.Y. July 19, 2000) (§ 411 does not require registration by party bringing infringement claim). Here, both the Pre-China RevUp Program and the China Program have indisputably "been registered." As such, § 411 is satisfied and Price Waterhouse and Liu met this statutory prerequisite to filing their respective infringement claims.

Liu and Yang also argue that, even if defendants could maintain an action for infringement under § 411, they cannot recover statutory damages under § 412 because they presented no evidence that copyright in the China RevUp Program was registered before the infringement occurred. Section 412 of the Copyright Act mandates that no award of statutory damages or of attorney's fees shall be made for any infringement of copyright in an unpublished work commenced before the effective date of its registration. 17 U.S.C. § 412. As such, the Pre-China Program must have been registered before Liu's infringement occurred in order for Price Waterhouse and CLR to recover statutory

---

[5]While both sides devoted much of their argument to whether Price Waterhouse had met the statutory prerequisite to filing an infringement action on the China Program, it is irrelevant whether Price Waterhouse had a registered copyright in the China Program because Price Waterhouse prevailed in its copyright claim by proving that Liu infringed its rights in the Pre-China Program. By exceeding the scope of the license to prepare a derivative work, as the jury found, Liu infringed on Price Waterhouse's rights in the Pre-China Program, regardless of any infringement of Price Waterhouse's rights in the derivative China Program. The China Program is relevant as an infringing work as much as it is a work which was infringed upon.

damages for infringement.

This court finds that the requirements of § 412 have been met for the same reasons the requirements of § 411 have been met. Liu and Yang have not, until now, suggested that Price Waterhouse did not meet its burden of showing a registered copyright in the Pre-China Program. The evidence made clear that registration of the Pre-China Program preceded Liu's infringement. An act of infringement alleged by Price Waterhouse against Liu was in registering a copyright in the China Program. That registration listed Price Waterhouse's registration numbers for the Pre-China Program. As such, it is clear that the Pre-China Program was registered before Liu claimed a copyright in the China Program. Having shown a registered copyright in the underlying work which pre-dated the infringement, Price Waterhouse and CLR may maintain an action on and recover statutory damages for the resulting derivative work which contains much of the same protectable expression as the underlying work.

For all the reasons stated, the jury was rational in concluding that Price Waterhouse held a valid registered copyright in the Pre-China RevUp Program and in the China RevUp Program and that Liu infringed those rights by exceeding the scope of the license which authorized Yang and the Sky Programers to develop the derivative work. Liu and Yang's motion for judgment as a matter of law or for a new trial on Price Waterhouse and CLR's copyright infringement counterclaim and cross claim must therefore be denied.

B.    Liu's Copyright Infringement Claim

For the same reasons Liu argues no rational jury could have found that Liu infringed upon Price Waterhouse's copyright in the China RevUp Program, they also argue that Liu is entitled to judgement as a matter of law on her copyright claim. Liu and Yang argue that copyright rights in the

China Program vested with the Sky Programers as authors of the derivative work, who then validly transferred those rights to Liu. As such, Liu argues, Price Waterhouse violated the Sky Programers' copyright as a matter of law by selling the China RevUp Program to CLR. Liu and Yang's argument fails for the same reason as their first -- the jury found that the copyright in the derivative China Program was to vest in Price Waterhouse, not the Sky Programers. As such, the Sky Programers had no copyright rights in the China RevUp Program to transfer to Liu. Because, under the jury's factual findings, Liu has no valid copyright rights in the program, her copyright claim fails.

The jury's finding that the Sky Programers held no rights in the China Program disposes of two of plaintiffs' arguments brought in this motion. First, Liu is not entitled to any profits from Price Waterhouse's sale of the China Program to CLR. Second, the McNerthny Post-China RevUp Program could not have infringed Liu's copyright in the China Program, regardless of similarity, because she had no copyright rights in the China Program. Plaintiffs' motion for judgment as a matter of law or for a new trial on Liu's copyright infringement must be denied.

### C. Yang's Contributory Infringement

Yang argues that the jury's finding that Yang contributed to Liu's infringement is erroneous for the same reasons that the jury's finding that Liu violated Price Waterhouse's copyright is erroneous. This court has already rejected that argument and found that the jury could have reasonably concluded that Liu violated Price Waterhouse's copyright rights. There was also sufficient evidence to support the jury's conclusion that Yang contributed to Liu's violation of Price Waterhouse's rights. Accordingly, there is no basis upon which to grant judgment as a matter of law or a new trial on Price Waterhouse and CLR's contributory infringement claim against Yang.

19

### D. Yang's Breach of Contact and Fiduciary Duty

The jury found that Yang beached her contractual and fiduciary duties to Price Waterhouse by failing to protect Price Waterhouse's copyright rights in the Pre-China RevUp Program. Again, the basis for Yang's argument is that Price Waterhouse had no rights to protect, such that Yang could not have failed to protect Price Waterhouse's rights. This court has already rejected that argument. Price Waterhouse did have copyright rights in the China Program, and there was sufficient evidence to show that Yang was bound by fiduciary duties as a Price Waterhouse employee and contract duties under her employment contracts to protect those rights, but failed to do so. Accordingly, plaintiffs motion for judgment as a matter of law or new trial on Yang's breach of fiduciary and contract duties is denied.

### E. Yang's Conversion of Property

The jury found that Yang converted Price Waterhouse's property by failing to turn over the source code for the Pre-China RevUp Program and the China Program. Yang argues that she could not be found liable for conversion because Price Waterhouse refused to pay her for the improvements, and thus breached its contract with her. However, the jury could have reasonably found, based on the evidence, that Yang had no right to hold on to the source code, and the reason Price Waterhouse did not pay her is because she refused to turn over the program, not vice-versa. Thus, Yang's motion for judgment as a matter of law and for a new trial on the conversion count must be denied as well.

### III. Yang's Motion for an Award of Prejudgment Interest

Finally, Yang moves for an award of prejudgment interest on the award of $600,000 in damages for her breach of contract claim, which this court has now reduced to $264,000. Yang argues that she is entitled to prejudgment interest because "the evidence at trial established beyond

a doubt that PW/CLR acknowledged, in November-December 1995, this amount of money was due and owing, but failed to pay any monies to Yang for the identified period of time," and the withholding of money was vexatious.

Under the Illinois Interest Act, a creditor may be able to receive interest at the rate of five percent per annum for all monies after they become due on money withheld by an unreasonable and vexatious delay of payment. 815 ILCS § 205/2. However, "[i]nterest is not awarded on money that may be found due, if the person withholding payment has done so in good faith, because of a genuine and reasonable dispute." General Dynamics Corp. v. Zion State Bank & Trust Co., 86 Ill.2d 135, 427 N.E.2d 131, 134 (1981); see also Empire Gas Corp. v. American Bakeries Co., 840 F.2d 1333, 1342 (7th Cir. 1988).

This court finds that Price Waterhouse withheld payment to Liu because of a genuine and reasonable dispute, and was not unreasonable or vexatious. It is undisputed that Price Waterhouse was to pay Yang $1,000 for each percentage point by which she sped up the RevUp Program, and that even Price Waterhouse's measurements showed that the improved China Program was at least 250% faster. However, the parties disputed other parts of the contract, and the jury ultimately found that Yang breached her contract with Price Waterhouse, as well. Price Waterhouse did not act vexatiously in demanding that Yang recognize its rights in the China RevUp Program before tendering payment. Yang's motion for prejudgment interest is therefore DENIED.

## CONCLUSION

For all the reasons stated, plaintiff's motion for judgment as a matter of law under Fed. R. Civ 50(b) or for a new trial under Rule 59 is DENIED in its entirety. Defendants' motion for remittitur is GRANTED. The jury's verdict on all claims shall stand. The jury's award of damages to Yang

on her breach of contract claim against Price Waterhouse is REDUCED from $600,000 to $264,000.

Yang's motion for prejudgment interest is DENIED.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN

United States District Judge

DATE: February 27, 2001